[Docket Nos. 64-65.]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

UNITED STATES OF AMERICA,

    v.

DOUGLAS VASQUEZ REYES,

       Defendant.

Crim. No. 21-401 (RMB)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge**

In this illegal reentry prosecution, the Government and Defendant Douglas Vasquez Reyes (Vasquez) both move in *limine* seeking to admit certain evidence or preclude the other from doing so. For the below reasons, the Court **GRANTS, in part, DENIES, in part, and RESERVES, in part,** the parties' motions.

## I. BACKGROUND

The Court takes the following allegations from the parties' briefs, the exhibits annexed thereto, and the charging instrument in this case.

Vasquez is an El Salvadorian citizen having been born there. [Gov't Mem. of Law in Supp. of Mot. in Limine 24-26 (Gov't Br.) (Docket No. 65); *see also* Gov't Exs. A-C (Docket Nos. 65-1 to -3).] In May 2002, an immigration judge ordered Vasquez removed from the United States (the 2002 Removal Order). [Gov't Br. at 1.] Sixteen years later, in March 2018, Vasquez was removed from the United States to El Salvador based on the 2002 Removal Order (the March 2018 Removal). [*Id.*; *see also* Gov't Mem. of Law in Opp'n to Vasquez' Mot. in Limine 4-5 (Gov't Opp'n Br.) (Docket No. 73) (explaining the 2002 Removal Order "was first executed in March 2018 and [Vasquez] was removed from the United States").]

Before his removal, Vasquez signed a form acknowledging that he could not return to the United States for ten-years, and that he would face criminal penalties if he reentered or tried to reenter the country without the Secretary of Homeland Security's (Homeland) express consent.  [*Id.* at 1-2.]

About two months later, Vasquez reentered the United States but did not have Homeland's permission to do so (the May 2018 Reentry).  [*Id.* at 2.]  In May 2018, an immigration judge issued a Warrant of Removal.  [*Id.*]  Then, in August 2018, Vasquez was removed again to El Salvador (the August 2018 Removal).  [*Id.*]  Before his removal, Vasquez signed another form acknowledging that he could not return to the United States, but this time, for twenty-years.  [*Id.*]  He again acknowledged that if he reentered the United States, or tried to, without Homeland's consent, he would face criminal penalties.  [*Id.*]

At the end of November 2020, Lindenwold Police Department officers arrested Vasquez for, among other things, aggravated assault, weapons offenses, and false imprisonment stemming from a domestic violence episode (the November 2020 Police-Encounter).  [*Id.*]  While in custody, United States Immigration and Customs Enforcement (ICE) agents encountered Vasquez in the county jail on December 1, 2020 (the December 2020 ICE-Encounter).  [*Id.*]

A federal grand jury eventually indicted Vasquez for illegal reentry, in violation of 8 U.S.C. § 1326(a).  [Docket No. 13.]  By the Indictment, the Government alleges Vasquez illegally reentered the United States after his August 2018 Removal when he "was found in the United States on or about December 2, 2020," and he reentered the country without the Attorney General's or Homeland's permission to reapply for admission to the United States. [*Id.*]

2

## II. MOTIONS *IN LIMINE*

### A. Evidence of Vasquez' Prior Removals and Reentries and Recent Arrest

By letter dated May 24, 2024, the Government notified Vasquez of its intent to introduce as evidence "documents and testimony" about:  (1) the March 2018 Removal; (2) the May 2018 Reentry; (3) the August 2018 Removal; (4) the November 2020 Police-Encounter; and (5) the December 2020 ICE-Encounter (the Rule 404(b) Notice). [Def.'s Mem. of Law in Supp. of Mot. in Limine 1 (Def. Br.) (Docket No. 64); *see also* Def.'s Ex. 1) (Docket No. 64-3).]  The Government asserted the above evidence is intrinsic, outside of Federal Rule of Evidence 404(b)'s ambit because that evidence will directly prove the charged offense.  [Gov't Rule 404(b) Notice 1.]  The Government explained the March 2018 Removal directly proves that Vasquez "had previously been removed from the United States." [*Id.* at 2.]  The Government added the May 2018 Reentry and August 2018 Removal directly prove that Vasquez "knowingly reentered or was found in the United States after removal" and was later removed from the country.  [*Id.*]  Finally, the Government contended the November 2020 Police-Encounter and December 2020 ICE-Encounter will show Vasquez "knowingly entered or was found in the United States after removal."  [*Id.*]  While the Government asserted the above evidence is all intrinsic, the Government, "in an abundance of caution," notified Vasquez of its plan to introduce the above evidence under Rule 404(b) to show Vasquez' "identity, his knowledge of the charged offense, absence of mistake, and lack of accident."  [*Id.* at 1-2.]

The Government now moves to admit the above evidence.  [Gov't Br. at 27-29.]  The Government seeks to introduce that evidence "along with related immigration history" arguing the evidence is intrinsic because it directly proves elements of illegal reentry—that is,

3

Vasquez "has been previously removed from the United States" and that he "knowingly and voluntarily reentered the United States." [*Id.* at 27, 29.]  The Government also adds the above evidence is admissible under Rule 404(b) to show Vasquez' identity, "knowledge and intent, absence of mistake or trustworthiness[,]" as well as showing "the element of prior removal" and alienage.  [*Id.* at 29.]   In opposition to Vasquez' motion to keep that evidence out, the Government argues the 2002 Removal Order is also admissible because the evidence is intrinsic.  [Gov't Opp'n Br. at 13-14.]    According to the Government, the August 2018 Removal is based on the reinstatement of the 2002 Removal Order.  [*Id.*]  Because the 2002 Removal Order is intrinsic, the Government contends Rule 404(b)'s notice provision does not apply.  [*Id.*]  The Government adds it does not seek to admit evidence of Vasquez' alleged illegal entry into the United States in 2001 in its case-in-chief.  [*Id.*]

Vasquez seeks to bar the Government from introducing any evidence on the May 2018 Reentry, the August 2018 Removal, the 2002 Removal Order, as well as his alleged illegal entry into the United States in 2001.  [Def. Br. at 5-9.]  Vasquez contends the above evidence is not intrinsic, but impermissible propensity evidence under Rule 404(b).  Vasquez adds that admitting evidence of multiple removals and reentries is prejudicial, cumulative, will waste time, and cause jury confusion.  [*Id.*]  On top of those reasons, he asserts the Government never notified him in its Rule 404(b) Notice that it intended to use the 2002 Removal Order or any evidence of his alleged illegal entry in 2001 at trial, and so, the Court should exclude it for lack of notice.  [*Id.* at 8-9.]  He also attacks the quality of the Rule 404(b) Notice claiming the Government did not comply with the Rule's notice requirement.  [*Id.* at 4 (citing Fed. R. Evid. 404(b)(3)(B)).]

4

Vasquez does not quarrel that his March 2018 Removal is admissible and does not object to it being admitted into evidence.[1]   [Def. Br. at 5.]   He also acknowledges that his November-2020 Encounter proves his presence in the United States, which is an element the Government needs to prove for illegal reentry. [*Id.* at 7.]   Still, he asks the Court to exclude "any evidence related to [his] underlying arrest in this case, except for the limited purpose of showing that he was found in the United States." [*Id.* at 8.]

### 1.  Intrinsic Evidence and Rule 404(b) Prior Bad Act Evidence

Rule 404(b) prohibits the admission of evidence of "any other crime, wrong, or act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."   Simply stated, the Rule bars the government from offering prior bad act evidence "only to show the defendant's propensity to commit the charged crime."   *United States v. Johnson*, 2024 WL 617719, at *3 (3d Cir. Feb. 14, 2024) (quoting *United States v. Caldwell*, 760 F.3d 267, 275 (3d Cir. 2014)).   But Rule 404(b) does not apply to "intrinsic" evidence—that is, evidence "related to the crimes charged."  *Id.*

Evidence is intrinsic, and thus outside of Rule 404(b)'s restrictions, if it:  (1) "directly proves the charged offense[,]" or (2) "facilitate[s] the commission of the charged crime." *United States v. Green*, 617 F.3d 233, 249-50 (3d Cir. 2010) (citations and internal quotation marks omitted).   If the proffered evidence falls outside those two categories, the evidence must be analyzed under Rule 404(b).   *Id.* at 250.   While Rule 404(b) bars the use of prior bad act

---

[1] In his reply brief, Vasquez asserts he "takes no position on which prior removal the Government relies on" to prove the removal element for illegal reentry.   [Def.'s Reply Br. in Supp. of Mot. in *Limine* 3 n.1 (Def. Reply Br.) (Docket No. 78).]   Vasquez adds that he does not object to the admission of the August 2018 removal as that removal is pled in the Indictment. [*Id.*]   He clarifies that he only objected to the August 2018 removal because the Government, in its Rule 404(b) Notice, relied on that removal for an impermissible propensity purpose— that is, "it showed not only that he was removed, but that he previously reentered the country." [*Id.* (emphasis removed).]

evidence to show propensity, the Rule does not bar the admissibility of prior bad act evidence when offered for a non-propensity purpose, like to show motive, opportunity, plan, knowledge, identity, absence of mistake, lack of accident, and so on.  Fed. R. Evid. 404(b)(2). Prior bad act evidence is admissible under Rule 404(b) if the "the evidence is (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested."  *Caldwell*, 760 F.3d at 277-78.

In criminal cases, Rule 404(b) requires the prosecution to provide the defendant with a written notice of its intent to use prior bad act evidence at trial.  Fed. R. Evid. 404(b)(3). The prosecution must provide "reasonable notice of any such evidence . . . so that the defendant has a fair opportunity to meet it[]" and the notice must be in writing and given to the defendant before trial.  *Id.* -404(b)(3)(A),(C).  That written notice must "articulate . . . the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose[.]"  *Id.* -404(b)(3)(B).   The Federal Rules of Evidence Advisory Committee explains Rule 404(b)(3)'s notice provisions were amended to require the prosecution to "articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose."  Fed. R. Evid. 404 advisory committee's notes, 2020 amendments.  The Committee goes onto explain that the amendments were necessary because the earlier version of the Rule "was understood by some courts to permit the government to satisfy the notice obligation without describing the specific act that the evidence would tend to prove, and without explaining the relevance of the evidence for a non-propensity purpose."  *Id.*

6

### a.  The Government's Rule 404(B) Notice is Proper

Before turning to the merits of the parties' evidentiary challenges, the Court addresses Vasquez' argument that the Government's Rule 404(b) Notice does not comply with Rule 404(b)(3) notice's provisions.  While Vasquez correctly points out the Government relies on cases predating the 2020 Amendments to Rule 404(b)(3), *see* Def. Reply Br. at 2, the Court finds the Rule 404(b) Notice here permissible.  The Government sent Vasquez the Rule 404(b) Notice a month before trial commences.  In the Notice, the Government lists Vasquez' prior removals and reentries the Government plans to introduce at trial, lists the dates of the alleged removals and reentries, and the proposed trial exhibits evidencing them.  In addition, the Government explained the purpose of introducing that evidence.  For example, the Government explained the March 2018 Removal is relevant to show that Vasquez has been previously removed, and will also show, among other things, his "identity and [his knowledge of the charged offense[.]"

While the Government may have couched the purpose of the removals and reentries in the terms of "intrinsic evidence," *see* Rule 404(b) Notice, the Court finds the Government articulated a non-propensity purpose and the reasoning supporting it within Rule 404(b)'s meaning.  And Vasquez' cases interpreting Rule 404(b)(3) given the 2020 Amendments do not justify excluding Vasquez' alleged reentries and removals for lack of notice.  For example, in *United States v. Abarca*, the Eighth Circuit found the prosecution failed to comply with Rule 404(b)(3)'s notice provision where the prosecutor did not file a Rule 404(b) notice, but the defendant received a copy of a pretrial interview of an individual who sold drugs with the defendant.  61 F.4th 578, 580 (8th Cir. 2023).  The *Abarca* court found the report containing the interview "provided notice of only the 'general nature' of his testimony" which was

insufficient under the amended version of Rule 404(b)(3).  *Id.*  Unlike *Abarca*, the Government provided a Rule 404(b) Notice detailing the proffered evidence, which goes beyond explaining the "general nature" of the evidence by pointing to non-propensity purposes for the evidence's use.   Thus, the Court denies Vasquez' motion to exclude the alleged reentries and removals for lack of Rule 404(b) notice.

### b.  Intrinsic Evidence v. Rule 404(b) Evidence: Vasquez' Removals and Reentries

Because the intrinsic evidence inquiry turns on the "charged offense," *see Green*, 617 F.3d at 249-50, the Court reviews what the Government needs to show to prevail in this illegal reentry prosecution.  To convict Vasquez of illegal reentry, the Government must prove that Vasquez:  (1) is an alien, (2) "was denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding," (3) entered, tried to enter, or was "found in[] the United States," and (4) did not receive permission from the Attorney General to apply for readmission.  8 U.S.C. § 1326(a).  As charged in the Indictment, the Government alleges Vasquez committed illegal reentry based on the August 2018 Removal, the November 2020 Police-Encounter, and the December 2020 ICE-Encounter.  [Docket No. 13.]

### i.  Intrinsic Evidence: the 2002 Removal Order, the May 2018 Reentry, and the August 2018 Removal

The August 2018 Removal is admissible because it is intrinsic evidence that goes directly to one element of illegal reentry the Government needs to prove.  8 U.S.C. § 1326(a).  Indeed, the Government must prove that Vasquez was removed from the United States.  *Id.* And the Government alleged in the Indictment Vasquez committed illegal reentry by reentering the United States after the August 2018 Removal.  [Docket No. 13.]

Rule 404(b)'s prohibition does not apply when the prior bad act evidence forms an element of the crime charged. *United States v. Elliot*, 235 F. App'x 879, 881 (3d Cir. 2007) (finding evidence of shooting admissible in felon-in-possession of a firearm prosecution to be intrinsic because the evidence was "probative of the possession element of the charged crimes"); *see also United States v. Diaz*, 2007 WL 9710010, at *2-3 (M.D. Pa. Dec. 18, 2007) (finding evidence intrinsic where it "directly proves one element" of the crime charged, and explaining that "the Third Circuit intended the definition [of intrinsic evidence] to refer to direct proof of *an element*, not every element, of the crime charged offense" (emphasis in original)); *accord United States v. Valderama-Mancilla*, 851 F. App'x 42, 43 (9th Cir. 2021) ("[E]vidence of [defendant's] prior removals not improper propensity evidence under [Rule 404(b)] because the evidence forms 'an essential element of the charged offense[.]" (quoting *United States v. Martinez-Rodriquez*, 472 F.3d 1087, 1091 (9th Cir. 2007))).

In illegal reentry prosecutions, "evidence showing that [defendant] had previously been deported is not Rule 404(b) evidence because the government [must] prove this element of the crime." *United States v. Moreno-Lopez*, 674 F. App'x 639, 641 (9th Cir. 2017) (quoting *United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007)); *see also United States v. Torres-Villalobos*, 487 F.3d 607, 611 (8th Cir. 2007); *cf. United States v. Dixon*, 327 F.3d 257, 259-60 (3d Cir. 2003) (rejecting defendant's argument that the "[d]istrict [c]ourt's application of his prior deportation as a predicate to his illegal reentry conviction under 8 U.S.C. § 1326" violated due process, and noting the district court denied defendant's motion in *limine* "to preclude the government from introducing evidence of prior deportation").

Turning to the May 2018 Reentry, the Court finds that evidence, too, is intrinsic. According to the Government, when Vasquez allegedly reentered the United States in May

2018, a border patrol agent apprehended him.  [Gov't Opp'n Br. at 9; *see also* Gov't Ex. 24.]
The Government explains that a few days later, Homeland issued a Warrant of
Removal/Deportation based on the 2002 Removal Order, which was executed by the August
2018 Removal.  [Gov't Opp'n Br. at 9; *see also* Gov't Exs. 24, 29.]   The May 2018 Reentry is
intrinsic because it led to the August 2018 Removal, which as explained above, is an element
of illegal reentry.  *See United States v. Hernandez-Bentiez*, 848 F. App'x 264, 277 (9th Cir. 2021)
(holding prosecution did not violate Rule 404(b) by referencing defendant's prior illegal
reentries and removals, reasoning that "Hernandez's prior entries, which led to his prior
removals, did not offend Rule 404(b) because the government had to prove the prior removals
as an element of the crime").   Indeed, the May 2018 Reentry is "part and parcel" of the August
2018 Removal.  *United States v. Fitzgerald*, 496 F. App'x 175, 180 (3d Cir. 2012) (quoting *Green*,
617 F.3d at 245).   The May 2018 Reentry is admissible as background or "completes the
story" evidence to explain the August 2018 Removal.  *See United States v. Gonzalez-Meza*, 277
F.3d 1373, 2001 WL 1485747, at *1 (5th Cir. 2001).   Put simply, the May 2018 Reentry will
help the jury understand why Homeland removed Vasquez in August 2018.

Onto the 2002 Removal Order, the Court finds that evidence is intrinsic.  Earlier, the
Court explained the Government must prove that Vasquez was removed from the United
States with an outstanding order of removal against him.  8 U.S.C. § 1326(a).  "A prior
removal order is evidence of [that] element."  *United States v. Ferman*, 811 F. App'x 490, 492
(10th Cir. 2020); *see also United States v. Guzman-Velasquez*, 919 F.3d 841, 844 (4th Cir. 2019)
("Under current law, this removal element requires proof of *both* a prior removal *and* the
existence of an outstanding removal order." (emphasis in original)).   Both Vasquez' prior
removals—the March 2018 and August 2018 Removals—stem from the 2002 Removal Order.

[Gov't Exs. 13-14, 23, 29.]  Because the Government must prove that Vasquez was removed with an outstanding order of removal against him, the 2002 Removal Order is admissible intrinsic evidence.

Thus, the Court denies Vasquez' motion to exclude the 2018 August Removal, the May 2018 Reentry, and the 2002 Removal Order, and grants the Government's motion to admit that evidence.

### ii. Rule 404(b):  The March 2018 Removal

In his papers, Vasquez does not object to the admission of the March 2018 Removal agreeing with the Government that evidence is intrinsic.  [Def. Br. at 5.]  At oral argument, Vasquez' position became less clear.  Because the Government charged Vasquez with illegal reentry based on the August 2018 Removal—not the March 2018 Removal—the Court reviews the March 2018 Removal's admissibility under Rule 404(b).  *See United States v. Haas*, 184 F. App'x 230, 234 (3d Cir. 2006) (finding evidence of a robbery committed on one date not intrinsic evidence in prosecution for felon-in-possession of a firearm where government alleged possession on a different date, reasoning "[w]hatever probative value the evidence about [defendant's] activities on the 19th may have had, it did not directly prove that [defendant] possessed the gun on the 21st").

The March 2018 Removal is admissible under Rule 404(b) for the non-propensity purpose to show Vasquez' knowledge of entering the United States without permission.  *See United States v. Estrada-Monzon*, 700 F. App'x 323, 328-29 (5th Cir. 2017) (finding defendant's "prior immigration history" consisting of "prior illegal reentries" was admissible under Rule 404(b) and "relevant to show his intent to knowingly return to the United States, given that he had returned several times after being deported").  The March 2018 Removal is "also

relevant to show that [Vasquez] had no legal right to be in the United States." *Id.* at 329. Relatedly, while not listed in Rule 404(b), the March 2018 Removal is also relevant to show alienage, which the Government must prove at trial. *See Moreno-Lopez*, 674 F. App'x at 641-42 (ruling defendant's prior removals were admissible in illegal reentry prosecution to prove alienage); *see also Torres-Villalobos*, 487 F.3d at 611-612 (finding no error in admitting prior conviction for illegal reentry to prove defendant's alienage).

The Court finds the probative value of the March 2018 Removal is not substantially outweighed by undue prejudice. *Estrada-Monzon*, 700 F. App'x at 329; *see also Martinez-Rodriquez*, 472 F.3d at 1091. The Court will ameliorate any undue prejudice to Vasquez by giving the jury a limiting instruction on the non-propensity purposes the jury may consider the March 2018 Removal for.[2] Despite Vasquez' contrary arguments, courts have upheld the admission of multiple removals and prior illegal reentries over Rule 403 objections based on undue prejudice and cumulative grounds. *See Estrada-Monzon*, 700 F. App'x at 329 (finding no error "in admitting evidence of [defendant's] prior reentries"); *see also United States v. Hermoso-Garcia*, 475 F. App'x 124, 126 (9th Cir. 2012) (finding no error in admitting defendant's three prior removals). And courts have refused to preclude admission of multiple removals based on the argument one removal is enough to prove illegal reentry. *See, e.g.*, *Cruz-Escoto*, 476 F.3d at 1088 (rejecting defendant's argument "that the government's use of multiple prior deportations, when proof of only one was necessary, constitutes reversible error"); *see also United States v. Lopes-Orellana*, 646 F. App'x 559, 560 (9th Cir. 2016) (holding evidence of defendant's four prior removals did not violate Rule 403).

---

[2] The parties shall submit a proposed limiting instruction that the Court will give to the jury.

Therefore, the Court grants the Government's motion to admit the March 2018 removal.

### iii. Intrinsic Evidence: the November 2020 Police-Encounter and December 2020 ICE-Encounter

Vasquez acknowledges that his "presence in the United States is an element to be proven at trial, and relevant." [Def. Br. at 7.] Still, he seeks to exclude the Government from presenting any evidence underlying his arrest in the November 2020 Police-Encounter "except for the limited purpose of showing that he was found in the United States." [*Id.* at 8.] His arguments are unavailing.

The November 2020 Police-Encounter and the December 2020 ICE-Encounter are admissible as intrinsic evidence. Those encounters directly prove one element of illegal reentry—that is, he was "found in" the United States. 8 U.S.C. § 1326(a)(2). Indeed, those encounters are "part and parcel" of the charged offense. *Fitzgerald*, 496 F. App'x at 180 (quoting *Green*, 617 F.3d at 245); *see also Torres-Villalobos*, 487 F.3d at 611 (finding district court did not err in admitting evidence that defendant "was found in" correctional facility "from a routine check of the jails" and "the circumstances of his apprehension" because that evidence was relevant to prove defendant was "found" in the United States).

The Government has agreed not to admit into evidence "any details of his domestic violence charges and the circumstances under which he was arrested." [Gov't Opp'n Br. at 12.] Thus, the Government must redact that information from the November 2020 Police-Encounter and the December 2020 ICE-Encounter. So the Court denies Vasquez'

motion to exclude the November 2020 Police-Encounter and the December 2020 ICE-Encounter, and grants the Government's motion to admit that evidence.[3]

**B. The Government's Motion to Bar Vasquez from Raising Duress and Necessity Defenses**

The Government moves to preclude Vasquez from asserting duress and necessity defenses at trial.  [Gov't Br. at 11-13.]  The Government asks this Court to preclude those defenses because Vasquez "has not proffered any evidence" to support them and Vasquez' Alien file contains no information to support them either.  [*Id.* at 13.]  Vasquez pushes back, arguing the Government's request is premature.  [Def. Opp'n Br. at 10-12.]  Vasquez asserts the Court should reserve on ruling whether he is entitled to a jury instruction on those defenses until after the parties put on their case, which according to him, is "ordinary trial practice." [*Id.* at 11.]

Courts can hold Rule 104 hearings to determine whether a defendant can establish a prima facie showing of a duress or necessity justification.  *United States v. Grover*, 831 F. App'x 604, 607-08 (3d Cir. 2020) (affirming district court's order granting government's motion in *limine* to preclude defendant from raising duress defense at trial where district court held Rule 104 hearing to determine whether defendant could establish a prima facie showing of duress); *see also United States v. Nwene*, 20 F. Supp. 2d 716, 722 (D.N.J. 1998) (ordering a Rule 104 hearing "in which the defendant shall be permitted to present all his evidence regarding the justification defense" where "[d]efendant sought a pretrial ruling on the admissibility relating to his 'justification' defense'").  "If [a defendant] fails to proffer sufficient evidence to support any one element [of a duress defense], the court may preclude him from presenting the defense

---

[3] In the event Vasquez opens the door to this redacted information at trial, the Court will revisit this issue.

at trial." *Grover*, 831 F. App'x at 607 (citing *United States v. Bailey*, 444 U.S. 394, 416 (1980)); *accord United States v. Portillo-Vega*, 478 F.3d 1194, 1201-02 (10th Cir. 2007).  This is so because evidence supporting a defense the jury will not receive instruction on is irrelevant and the "jury need not be burdened with testimony supporting other elements of the defense." *Bailey*, 444 U.S. at 416; *see also Nwene*, 20 F. Supp.2d at 721 (explaining that if duress defense fails as a matter of law because the evidence is lacking, the evidence supporting that defense is "therefore irrelevant (barred by Rules 401 and 402 because it does not go to a fact of consequence in the case)").

Vasquez shoulders the burden to prove duress or necessity by the preponderance of evidence.  *Grover*, 831 F. App'x at 607.  To establish duress, Vasquez must show:  "(1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm." *United States v. Castro-Molina*, 826 F. App'x 154, 156 (3d Cir. 2020) (analyzing the elements of justification defense in illegal reentry prosecution) (quoting *United States v. Paolello*, 951 F.2d 537, 540 (3d Cir. 1991)).  To obtain a jury instruction, Vasquez must make a prima facie showing of duress.  *United States v. Naovasairi*, 150 F. App.'x 170, 173-74 (3d Cir. 2005).   If Vasquez cannot present some evidence as to each element of duress, the defense would fail as a matter of law, and therefore, he would not be entitled to a jury instruction on the defense.  *Grover*, 831 F. App'x at 608.

The Court initially scheduled a Rule 104 hearing to determine whether Vasquez can establish a prima facie showing of duress.  [Docket No.  77.]  Vasquez then moved to make

an *ex parte* proffer on a potential duress defense. [Docket No. 79.] In his application, Vasquez asks the Court to hear his proffer outside the Government's presence arguing the prosecution has no role to play in whether he can make a prime facie showing of duress. [*Id.*] At oral argument on these motions, the Court addressed Vasquez' application. [Docket No. 80.] The Court incorporates its oral decision into this opinion in full. If Vasquez' *ex parte* proffer is insufficient, the Court will hold a Rule 104 hearing. So the Court reserves on the Government's motion to bar Vasquez from presenting a duress or necessity defense at trial. The Court precludes Vasquez from making any such argument to the jury until the Court rules.

**C. The Government's Motion to Exclude Evidence on Vasquez' State of Mind, Good Faith or Mistake, Vasquez' Motive to Reenter the United States, and Vasquez' ties to the United States**

The Government moves to bar Vasquez from presenting any evidence on his state of mind, motives to reenter the country, and evidence tying Vasquez to the United States, like former residency, family presence, work history, and so on. [Gov't Br. at 4-11.] The Government claims illegal reentry is a "strict liability" or "general intent crime" that does not require it to prove Vasquez knew it was illegal to enter the United States. [*Id.*] So the Government contends evidence relating to Vasquez' good faith or mistake is irrelevant. [*Id.* at 5-8.] The Government also seeks to bar evidence about Vasquez' motive to reenter the United States, like his family presence, alleged threats by MS-13 gang members, and his brother's death. [*Id.* at 9.] The Government contends the evidence is irrelevant in an illegal reentry prosecution, and the evidence's only purpose is for jury nullification. [*Id.* at 9-10.] The Government adds evidence relating to Vasquez' ties to the United States is irrelevant and creates a risk of jury nullification. [*Id.* at 13-14.]

16

Vasquez argues the Government is wrong on the law by arguing illegal reentry is a strict liability offense. [Def. Opp'n Br. at 2.] He agrees illegal reentry is a general intent crime, and mistake of law and good faith defenses are unavailable. [*Id.*] Thus, he "does not plan to rely on a mistake of law or good faith defense that would only speak to specific intent." [*Id.*] Vasquez next asks the Court to deny the Government's request to bar him from presenting evidence on his motive to reenter the United States. [*Id.* at 4-6.] Vasquez argues he has a constitutional right to present a defense and he is allowed to present "his story" to the jury. [*Id.* at 6-7.] He goes onto explain the risk of jury nullification from hearing his side of the story does not justify curtailing him from providing background testimony to the jury. [*Id.* at 7; *see also id.* at 12] Vasquez goes onto explain that juries are allowed to nullify so long as a party does not advocate for nullification. [*Id.* at 8.]

Illegal reentry is a general intent crime requiring the Government to prove that Vasquez reentered the United States voluntarily. *Dixon*, 327 F.3d at 260; *see also Nwene*, 20 F. Supp. 2d at 719 (explaining prosecution "must prove that the defendant's act of entering or attempting to enter the United States was a voluntary act"); *accord United States v. Lucio-Garza*, 762 F. App'x. 190, 191 (5th Cir. 2019) (explaining illegal reentry "has a general intent mens rea . . . that requires [proof] that a defendant reenter[ed] the country voluntarily" (quoting *United States v. Guzman-Ocampo*, 236 F.3d 233, 237 (5th Cir. 2000))).

In illegal reentry prosecutions, a defendant's motive to reenter the country is irrelevant. *See United States v. Dyer*, 325 F.3d 464, 471 (3d Cir. 2003) (affirming district court's refusal to grant downward sentencing departure where defendant stated he reentered the country "to obtain legal employment[,]" reasoning "[i]t is evident from the language of 8 U.S.C. § 1326 that the motive of the illegal entrant in reentering is irrelevant to the commission of the

offense").  Courts have refused to allow defendants to assert good faith defenses or present evidence on their state of mind in illegal reentry prosecutions.  *Nwene*, 20 F. Supp. 2d at 720 (denying defendant's "motion to permit evidence of his good faith belief that he could legally enter the country to seek asylum"); *see also United States v. Alamanza-Vigil*, 2015 WL 13667423, at *3 (D.N.M. Dec. 10, 2015) (granting government's motion to preclude defendant from presenting evidence on his mental state, reasoning that "the fact that a defendant was not cognizant of his legal status in the United States, was unaware of the prior deportation, had strong personal reasons to re-enter the United States (family, economic, or cultural), or had other compelling reasons to re-enter, is not relevant").

Here, the Court grants the Government's motion to bar Vasquez from presenting evidence of good faith or mistake.  *Nwene*, 20 F. Supp. 2d at 720.  The Court reserves on the Government's motion to preclude Vasquez from presenting evidence on his motive to reenter the United States until the Court determines whether Vasquez has established a prima facie showing of duress or necessity.  If Vasquez cannot establish a prima facie case of duress, then the Court will grant the Government's motion to preclude any evidence on Vasquez' motive to reenter the country.  *Alamanza-Vigil*, 2015 WL 13667423, at *3.  As explained at oral argument, the Court will allow Vasquez to present background information about himself with limitations.  The Court, however, will not permit Vasquez to present evidence that he reentered the country *because of* his family or work opportunities.  The Court precludes that evidence.  The Court incorporates its oral ruling on this issue in full.  [Docket No. 80.]

The Government also moves to preclude evidence about Vasquez' previous applications for temporary protected status.  [Gov't Br. at 11.]  The Court grants that motion because that evidence is irrelevant.  *See, e.g., United States v. Chun Lin Zhang*, 358 F. Supp. 3d

157, 158-59 (D. Mass. 2019) (holding application for provisional unlawful presence waiver is irrelevant in illegal reentry prosecution explaining "any resultant waiver is not relevant to the charged offense of illegal reentry or any defense thereto"); *see also United States v. Florentino-Rosario*, 19 F.4th 530, 538 (1st Cir. 2021) (finding petition for asylum irrelevant in illegal reentry prosecution).

Finally, the Government also moves to preclude Vasquez from testifying about his ties to the United States, such as his prior employment history and family in the United States. [Gov't Br. 13.] Vasquez argues the Government's request hampers his constitutional right to present a defense, and he has a right to "tell his own story." [Def Opp'n Br. at 12.]

"While the Constitution mandates that a criminal defendant is entitled to a meaningful opportunity to present a complete defense, 'well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.'" *United States v. Perez*, 459 F. App'x 191, 197 (3d Cir. 2012) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006)). In illegal reentry prosecutions, some courts have prohibited a defendant from presenting evidence on their prior work history or family presence in the United States, finding the evidence irrelevant and could open the door to jury nullification. *Id.* at 197-98 (affirming district court's order barring defendant from presenting "evidence of his family and work life in the United States" on relevance and risk of jury nullification grounds, reasoning that "[i]t is unclear how evidence of [defendant's] family and work life in the United States is relevant to the elements of [illegal reentry]" and the "evidence poses an improper risk of jury nullification"). Courts will exclude evidence that could lead to jury nullification. *United States v. Epstein,* 91 F. Supp. 3d 573, 597 (D.N.J. 2015) (excluding defendant's proffered evidence

19

under Rule 403 because the evidence "would open the door to jury nullification").  That said, and as the Court already explained at oral argument, Vasquez may present limited evidence about his background to the jury.  The Court will revisit this ruling if the evidence appears aimed at Vasquez' motive to reenter the United States or for jury nullification.  If this happens, the Court will instruct the jury that Vasquez' motive is irrelevant and the questioning is improper.

### D. The Admissibility of the Certificate of Non-Existence of Records (CNR)

The Government seeks to admit a CNR showing "that a diligent search of computerized databases relating to [Vasquez] has been made and there are no documents that indicate [Vasquez] applied for permission to reenter the United States."  [Gov't Br at 22.]  The Government explains admitting the CNR will not violate Vasquez' Sixth Amendment right to confront witnesses against him because the witness who prepared the CNR will testify at trial and be subject to cross-examination.  [*Id.*]  Because the Government will have a live witness testify about the CNR, the Government claims the absence of a public record hearsay exception's notice provision does not apply.  [Gov't Opp'n Br. at 19 (citing Rule 803(10)(B)).]  Even so, the Government claims it notified Vasquez multiple times of its intent to introduce a CNR at trial.  [*Id.* at 19-20.]  Vasquez does not oppose having live testimony from a witness who searched the public databases and prepared the CNR.  [Def. Opp'n Br. at 15.]  Vasquez does, however, object to admitting the CNR into evidence because the Government did not comply with Rule 803(10)(B)'s notice requirements.  [*Id.*]  Vasquez adds that having a live witness does not cure the hearsay problem with the CNR.  [Def. Reply Br. at 3.]  He also explains the witness who the Government identified who conducted the records "does not appear to be the author of any of the provided CNRs."  [*Id.*]

20

The Sixth Amendment's right to confront witnesses against the accused bars the admission of testimonial hearsay. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "To qualify as testimonial [hearsay,] the challenged statements must have been made or elicited with the 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution[.]'" *United States v. Summerlin*, 2023 WL 6532645, at *2 (3d Cir. 2023) (second and third alterations in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 375 (2011))); *see also United States v. Henry*, 2023 WL 2770817, at *4 (3d Cir. Apr. 4, 2023) ("A statement is testimonial when it is a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" (quoting *Crawford*, 541 U.S. at 51)). "Testimonial statements cannot be offered against a defendant without the opportunity for cross examination." *United States v. Lacerda*, 958 F.3d 196, 208 (3d Cir. 2020); *see also United States v. Moreno*, 809 F.3d 766, 774 (3d Cir. 2016) ("If the absent witness's statement is testimonial, then the Confrontation Clause requires unavailability and a prior opportunity for cross-examination." (quoting *United States v. Berrios*, 676 F.3d 118, 127 (3d Cir. 2012))). Courts have found CNRs are testimonial hearsay because they "are not routinely produced in the course of government business but instead are exclusively generated for use at trial." *United States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010); *see also Gov't of V.I. v. Gumbs*, 426 F. App'x 90, 94 (3d. Cir. 2011) (ruling CNRs are testimonial hearsay).

Rule 803(10) exempts from hearsay testimony or a certificate "that a diligent search failed to disclose a public record" when the "testimony or certification is admitted to prove" either: "the record or statement does not exist; or [] a matter did not occur or exist, if a public office regularly kept a record or statement for a matter of that kind." Fed. R. Evid. 803(10)(A). In criminal cases, if the prosecution plans to use a CNR at trial, the prosecution must provide

the defendant with "written notice of that intent at least 14 days before trial." *Id.* –(10)(B). If the defendant does not object in writing within 7 days of receiving the notice," the CNR is admissible. *Id.* -10(B). Rule 803(10)(B)'s notice provision was added after the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). Fed. R. Evid. 803, advisory committee notes, 2013 amendments. The Federal Rules of Evidence Advisory Committee explained "[t]he *Melendez-Diaz* Court declared that a testimonial certificate could be admitted if the accused is given advance notice and does not timely demand the presence of the official who prepared the certificate." *Id.* The Committee further explained that Rule 803(10)(B)'s notice provision is a merely a "notice-and-demand" procedure. *Id.*

Here, the Government has proffered that it will call the witness who prepared the CNR the Government wants to admit into evidence. So the Court will admit the CNR into evidence over any Confrontation Clause or hearsay objections. *See United States v. Villacana-Ochoa*, 2010 WL 3584013, at *2 (E.D. Wash. Mar. 15, 2010) (denying motion to reconsider denial of motion for acquittal, and finding admission of CNR did not violate defendant's right to confront witnesses against him where government introduced CNR through witness who signed it), *aff'd*, 436 F. App'x 737 (9th Cir. 2011). Vasquez will have an opportunity to cross-examine the witness who performed the records search and prepared the CNR. Courts have only found Confrontation Clause violations where CNRs were admitted and the defendant did not have an opportunity to cross-examine the individual who prepared it. *See, e.g., Gumbs*, 426 F. App'x at 93-94.

Turning to Vasquez' notice objection, Vasquez miscomprehends Rule 801(10)(B)'s notice provision's purpose. As explained, Rule 801(10)(B) is a notice-and-demand provision providing a mechanism for a criminal defendant to raise a Confrontation Clause objection.

22

Fed. R. Evid. 803, advisory committee notes, 2013 amendments.  In *Melendez-Diaz*, the Supreme Court explained that notice-and-demand statutes "govern the time within which" a defendant must raise a Confrontation Clause objection.  557 U.S. at 326-27.  The Federal Rules of Evidence Advisory Committee explained Rule 803(10)(B)'s notice provision "incorporates a 'notice-and-demand' procedure that was approved by the *Melendez-Diaz* Court."  Fed. R. Evid. 803, advisory committee notes, 2013 Amendments (citing Tex. Code Crim. P. Ann., art. 38.41)).   Thus, the Court denies Vasquez' motion to exclude the CNR.

### E.  The Admissibility of Documents in Vasquez' Alien File

The Government moves to admit into evidence several documents contained in Vasquez' Alien file (the A-File).  [Gov't Br. at 17-21.]  "An A-file is the file maintained by various government agencies for each alien on record and may include identifying documents such as a passport, driver's license, other identification cards, and photographs, as well as immigration history . . . and all documents and transactions relating to the alien."  *United States v. de Jesus-Concepcion*, 652 F. App'x 134, 139 n.2 (3d Cir. 2016) (alteration in original, internal citation and quotation marks omitted).

From Vasquez' A-File, the Government seeks to introduce:   (1) Warrants of Deportation; (2) the 2002 Removal Order; (3) the Notices to Appear; (4) several I-213 forms (entitled Record of Deportable/Inadmissible Alien) (Gov't Exs. 30, 24, 20, and 10); and (5) an I-215B form (entitled Record of Sworn Statement) (Gov't Ex. 25).  [Gov't Br. at 21; *see also* Gov't Opp'n Br. at 22-23.]  The Government contends these documents are non-testimonial and admissible under the public and business records hearsay exceptions. [Gov't Br. at 20-22.] While the Government acknowledges some information in the I-213 forms should be redacted, like references to Vasquez' criminal history and temporary protected status, the

Government objects to redacting any references in the I-213s discussing Vasquez' run-ins with Homeland agents.  [Gov't Opp'n Br. at 22.]

Vasquez moves to exclude the I-213 and I-215B forms, arguing they are "hearsay, [] not self-authenticating, and/or violate the Confrontation Clause."  [Def. Br. at 11.]  Vasquez focuses his challenge on the I-213 forms, arguing those documents contain testimonial hearsay in the form of narratives about Vasquez' "apprehension, statements, and history." [*Id.* at 13.]  Vasquez asks this Court to order the Government to redact "non-routine and non-biographical information" from the I-213s.  [*Id.* at 12; *see also* Def. Opp'n Br. at 14.] Vasquez also challenges the admissibility of the I-215B form, arguing its testimonial hearsay. [Def. Reply Br. at 7.]  Vasquez goes onto explain the Homeland agent who prepared the form acted as both Vasquez' translator and scrivener, and so, any statements attributed to Vasquez in the form belong to the agent—not Vasquez.  [*Id.*]  Setting the I-213 and I-215B forms aside, Vasquez agrees that the notices to appear and warrants of removal are non-testimonial, and does not object to their admission (provided the Government is limited to presenting evidence of only one removal).  [Def. Opp'n Br. at 14.]

1.  **The Admissibility of the Notices to Appear, Warrants of Removal, and the 2002 Removal Order**

The Court grants the Government's motion to admit the Notices to Appear, the Warrants of Removal, and the 2002 Removal Order.  First, Vasquez does not object to the admission of the Notices to Appear and Warrants of Removal on hearsay or Confrontation Clause grounds.  [Def. Opp'n Br. at 14.]  Second, those documents are non-testimonial, and their admission does not violate the Confrontation Clause.  *See, e.g.*, *United States v. Garcia*, 887 F.3d 205, 213-14 (5th Cir. 2018) (holding warrants of removal are non-testimonial and "are admissible in criminal prosecutions absent confrontation"); *United States v. Albino-Leo*,

24

747 F.3d 1206, 1210-11 (9th Cir. 2014)  (holding notices to appear non-testimonial); *United States v. Valdovinos-Mendez*, 641 F. App'x 1031,1034-35 (9th Cir. 2011) (ruling warrant of removal and immigration judge's order of removal non-testimonial).  Third, those documents are admissible as public records under Rule 803(8).  *See, e.g.*, *Garcia*, 887 F.3d at 212 (warrant of removal admissible as public record); *United States v. Diaz-Lopez*, 403 F. App'x 199, 201-02 (9th Cir. 2010) (explaining warrants of removal and immigration judge's order of removal are admissible as public records); *see also United States v. Hernandez-Herrera*, 273 F.3d 1213, 1217-18 (9th Cir. 2001) ("[D]eportation documents are admissible to prove alienage under the public records exception to the hearsay rule.").  So, those documents are admissible.

### 2.  The Admissibility of the I-213s

"An I–213 is an official record routinely prepared by an [immigration] agent as a summary of information obtained at the time of the initial processing of an individual suspected of being an alien unlawfully present in the United States." *United States v. Noria*, 945 F.3d 847, 849-50 (5th Cir. 2019) (citation, footnote, and internal quotation marks omitted).  Said another way, the form is "record of an immigration inspector's conversation with an alien who will probably be subject to removal." *Id.* at 850 (citation, footnote, and internal quotation marks omitted).  The I-213 includes, among other things, "the individual's name, address, immigration status, the circumstances of the individual's apprehension, and any substantive comments the individual may have made." *Id.* (citation, footnote, and internal quotation marks omitted).  "[I]mmigration agents prepare an I-213 every time they encounter an alien suspected of being removable, regardless of whether that alien is ever criminally prosecuted or civilly removed." *Id.* at 857.

By Rule 803(8), a public record or statement of a public office is admissible if it, among other things, sets out: (1) "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel," and (2) the party opposing admission "does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(ii), (B). The Rule's law-enforcement exclusion bars the admission of public records "containing matters observed by police officers and other law enforcement personnel in criminal cases." *United States v. Foreman*, 84 F.4th 615, 619 (5th Cir. 2023) (quoting Fed. R. Evid. 803(a), advisory committee's note to 1974 enactment); *see also United States v. De Peri*, 778 F.2d 963, 977 (3d Cir. 1985) (explaining Rule 803(8)(A)(ii)'s law-enforcement exclusion "prevents the introduction of law enforcement reports against defendants in criminal cases"). Several courts have found Rule 803(A)(ii)'s law-enforcement exclusion does not apply to law-enforcement's "routine observations that are inherently non-adversarial." *United States v. Dowdell*, 595 F.3d 50, 71 (1st Cir. 2010) (collecting cases from the Second, Fifth, Eight, Ninth, and Eleventh Circuits); *see also United States v. Grady*, 544 F.2d 598, 604 (2d Cir. 1976) (noting that when Congress enacted Rule 803(8)'s law-enforcement exclusion, "Congress was concerned about prosecutors attempting to prove their cases in chief simply by putting into evidence police officers' reports of their contemporaneous observations of crime.").

The Fifth, Ninth, and Eleventh Circuits have found *portions* of I-213s are admissible under the public records hearsay exception and their admission does not violate the Confrontation Clause. *Noria*, 945 F.3d at 855-60; *United States v. Torralba-Mendia*, 784 F.3d 652, 664-66 (9th Cir. 2015); *United States v. Caraballo*, 595 F.3d 1214, 1226-29 (11th Cir. 2010). These courts found the admission of redacted I-213s proper where the Government redacted

26

the forms to show only routine biographical information, like the alien's name, citizenship, birthplace, biometric data, A-file number, and so on. *Noria*, 945 F.3d at 850 (discussing unredacted portions); *see also Caraballo*, 595 F.3d at 1226 (same). These courts rejected Confrontation Clause challenges to the admission of the redacted I-213s, finding the form (in its redacted state) non-testimonial. *See, e.g.*, *Noria*, 945 F.3d at 857-58. For example, the Fifth Circuit explained Homeland agents "routinely produce[]" I-213s and the form's "primary purpose is administrative, not investigative or prosecutorial." *Id.* at 857. These Circuits have also rejected hearsay challenges to I-213s, finding the redacted form falls within the public records hearsay exception, Rule 803(8). *See, e.g.*, *Caraballo*, 595 F.3d at 1226. As the Eleventh Circuit explained, I-213s are public records because Homeland agents "routinely complete[]" the form "in the course of their non-adversarial duties, not in the course of preparing for a criminal prosecution." *Id.*

But in those cases, the prosecution had redacted the narrative section of the I-213s discussing the defendant's apprehension and statements to Homeland agents. *See, e.g.*, *Torralba-Mendia*, 784 F.3d at 658 (noting that the prosecution redacted from I-213 Homeland "agent's narrative detailing how people were apprehended, and all other statements made by the detainee"); *see also Noria*, 945 F.3d at 850 (noting the prosecution only offered the first page of I-213s, which omitted the narrative sections of form). The Fifth Circuit expressly declined to address whether the "remaining pages" of the I-213 not admitted at the trial violated the Confrontation Clause. *Noria*, 945 F.3d at 850. It also cabined its ruling on the I-213's admissibility as a public record to "only biographical and administrative-processing data." *Id.* at 860.

27

Here, Vasquez objects only to the admission of the I-213s narrative section containing information about his apprehension and criminal history, and asks the Court to order the Government to redact that information.   [Def. Br. at 12-13.]   The Government, as the proponent of the I-213s, shoulders the burden to prove they are admissible and not hearsay. *See United States v. George*, 209 F. App'x 142, 146 (3d Cir. 2006).   And the Government has not explained how Rule 803(8)(A)(ii)'s law-enforcement exclusion does not apply to the I-213s' narratives it wants in evidence.   Indeed, the cases the Government relies on—*Noria*, *Torralba-Mendia,* and *Caraballo*—offer no support because the prosecution redacted the I-213s' narratives in those cases.

The Homeland agents who prepared the I-213s here qualify as law-enforcement personnel under Rule 803(8)(A)(ii).   *Noria*, 945 F.3d at 858.   The I-213s' narratives include details about Homeland agents apprehending Vasquez after an illegal reentry. Those are observations made by law-enforcement personnel.   Fed. R. Evid. 803(8)(A)(ii).   In fact, the May 2018 I-213's narrative contains a section labeled "Immigration/Criminal Violation" which states Vasquez "admitted to illegally crossing the international boundary."  [Gov't Ex. 24.]   These narratives appear geared to a future criminal prosecution, and so, not admissible as a public record.  *See United States v. Lopez*, 762 F.3d 852, 861 (9th Cir. 2014) (explaining Rule 803(8)(A)(ii)'s law-enforcement exclusion's purpose "is to exclude observations made by officials at the scene of the crime or apprehension, because observations made in an adversarial setting are less reliable than observations made by public officials in other situations" (citation and internal quotation marks omitted)).   The Government has not explained how the I-213s' narratives are routine or non-adversarial, and therefore, those portions of the I-213s are inadmissible.  Because the I-213s' narratives are inadmissible under

the public records hearsay exception, the Court need not consider the business records hearsay exception. *See United States v. Cain*, 615 F.2d 380, 382 (5th Cir. 1980) (explaining business record hearsay exception cannot be used as a "back door" to admit inadmissible public records); *see also De Peri*, 778 F.2d at 977 (rejecting argument that FBI reports are business records, and examining the reports under the public records hearsay exception).

So the Court denies the Government's motion to admit the I-213s' narratives. The Court grants Vasquez' request, and orders the Government to redact from the I-213s all "non-routine and non-biographical information." [Def. Br. at 12.] The Court orders the Government to redact the I-213s in the manner the Fifth, Ninth, and Eleventh Circuits have approved. Of course, if Vasquez opens the door about the I-213s narratives, the Court will revisit this ruling.

### 3. The Admissibility of the I-215B

The I-215B, called a Record of Sworn Statement (RSS), is an affidavit prepared by Homeland Agent Jose Zuniga that Vasquez signed. [Gov't Ex. 25.] Zuniga took a statement from Vasquez following the May 2018 Reentry. [*Id.*] Zuniga questioned Vasquez in Spanish and served as Vasquez' interpreter. [*Id.*] According to the RSS, Vasquez waived his *Miranda* rights and gave a statement. [*Id.*] Vasquez admitted, among other things, that he is El Salvadorian citizen having been born there and that he had previously been removed from the United States. [*Id.*] Vasquez added he reentered the United States in May 2018 by crossing the Rio Grande River. [*Id.*] He also stated that he never sought permission to reenter the United States after his removal. [*Id.*] Vasquez signed the RSS, "affirm[ing] that the answers attributed to [him] herein are true and correct to the best of [his] knowledge and belief

and that this statement is a full, true, and correct record of [his] questioning" by Zuniga.  [*Id.*] Zungia and another witness signed the RSS.  [*Id.*]

The Ninth Circuit faced a similar evidentiary challenge to an RSS like the one Vasquez makes here.  *United States v. Gutierrez-Salinas*, 640 F. App'x 690 (9th Cir. 2016).   In *Gutierrez-Salinas,* the defendant challenged the admissibility of two RSSs from different illegal reentries, a 2013 RSS and 2014 RSS.  *Id.* at 692.  There, like Vasquez does here, the defendant challenged the admissibility of both RSSs arguing:  (1) they were inadmissible hearsay "because they are in English and [defendant] neither writes nor speaks English[,]" and (2) "their admission violated the Confrontation Clause."  *Id.*  The Ninth Circuit found the district court properly admitted the 2013 RSS, but not the 2014 RSS.  *Id.* at 692-93.

For the 2013 RSS, the *Gutierrez-Salinas* court explained that a mere signature on the RSS was not enough to show the defendant adopted the statement for it to be admissible as party-opponent statement under Rule 801(d)(2)(B) if a significant language barrier existed. *Id.*  But the Court found the defendant adopted the RSS by signing it.  *Id.*  In doing so, the court explained the government presented "the translator and administrating officer of the 2013 RSS" who "testified that she went through the entire form with [the defendant] in Spanish and then recorded his answers verbatim in English."  *Id.*  That testimony, coupled with the defendant's signature, established that the defendant adopted the RSS as his statement. *Id.*  And "[b]ecause [the defendant] adopted the 2013 RSS, "the Confrontation Clause does not bar its admission."  *Id*.

At the same time, the Court found the admission of the 2014 RSS improper because the prosecution never called the translator or administrating officer of that RSS.  *Id.*  Without that testimony, the court found the defendant's signature alone "insufficient to establish his

adoption of [that] RSS.  *Id.*  The court also found the 2014 RSS violated the Confrontation Clause because it is testimonial.  *Id.* at 693.  The court reasoned that "[a]s the 2014 RSS is, on its face, an affidavit, most people would have reasonably expected it to be used prosecutorially."  *Id.*  Because the prosecution could not attribute the 2014 RSS to the defendant, the prosecution had to call the form's author as a witness, which never happened.  *Id.*

Here, the Government has proffered that Zuniga will testify at trial.  The Court will hold a Rule 104 hearing on the admissibility of the I-215B that will address the concerns raised by the *Gutierrez-Salinas* court.

**F.  The Admissibility of Vasquez' Birth Certificate**

The Government moves to admit Vasquez' El Salvadorian birth certificate.  [Gov't Br. at 22-27.]  The Government first argues the birth certificate is self-authenticating as a foreign public document under Rule 902(3).  [*Id.* at 23-25.]  The Government next argues the birth certificate is authentic under Rule 901(a) based on the multiple references to Vasquez' country of birth in the A-file documents.  [*Id.* at 25.]  To show its authenticity, the Government asserts Vasquez annexed the birth certificate to a Stay of Removal in connection with the March 2018 Removal (the Stay Application).  [*Id.*]  The Government also asserts that Vasquez' 2003 employment benefits application reveal that the birth date on the form matches the birth date in the birth certificate.  [*Id.*]

Vasquez opposes the motion, arguing the birth certificate is not self-authenticating because the Government has not produced the certificate of genuineness Rule 902(3) requires.  [Def. Opp'n Br. at 16.]  He adds the Government cannot authenticate the birth certificate under Rule 901(a) by pointing to its presence in the A-file.  [*Id.* at 17 (citing *United States v.*

*Jasso*, 2023 WL 1879405, at *3 (5th Cir. Feb. 10, 2023)).]   Vasquez also contends Rule 901 addresses the process of authenticating documents at trial.  [*Id.*]

By Rule 902(3), a foreign document is self-authenticating if it: (1) is "signed or attested by a person who is authorized by [the] foreign country's law to do so[,]" and (2) accompanies "a final certification that certifies the genuineness of the signature and the official position of the signer or attester[.]"  Fed. R. Evid. 902(3).  The Rule has two components.  "First, there must be some indication that the *document* is what it purports to be."  *United States v. Squillacote*, 221 F.3d 542, 562 (4th Cir. 2000) (emphasis in original).  So, "the proffered document must be executed by a proper official in his official capacity, or the genuineness of the document must be attested to by a proper official in his official capacity."  *Id.*  "Second, there must be some indication that the *official* vouching for the document is who he purports to be."  *Id.* (emphasis in original).  For this component, Rule 902(3) requires "that one of a specified group of foreign officials . . . issue a final certification attesting to the genuineness of signature and title of the person executing or attesting to the [proffered] document, or of another official who has certified the signature and position of the person executing or attesting to the document."  *Id.*  A court can excuse Rule 902(3)'s final certification of genuineness requirement and order the foreign document to "be treated as presumably authentic" if:  (1) "all parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy," and (2) "good cause" exists.  Fed. R. Evid. 902(3)(A).

Vasquez' birth certificate bears a signature of "Wender Melvin Ventura" with a job title "Jefe Del Registro Familia."  [Gov't Ex. 5.]  The translation of the birth certificate reveals that job title means "Local Registry Secretary of Family."  [*Id.*]  The Government has not produced a certificate of genuineness accompanying the birth certificate.

At oral argument, the Court questioned the Government on its efforts to obtain a final certificate of genuineness that Rule 902(3) requires.  Besides seeking a certified translation of the birth certificate, the Government did not obtain a final certificate of genuineness.  The Court then asked the parties about whether good cause exists to excuse the final certificate requirement.  The Court ordered the Government to supplement the record with information on when it:  (1) provided Vasquez with the A-file allegedly containing the birth certificate; and (2) notified Vasquez of its intent to introduce the birth certificate at trial.   In its supplemental filing, the Government asserts it provided a copy of the birth certificate along with its exhibit list, which references the birth certificate, on May 17, 2024.  [Docket No. 21.] The Government adds that, two weeks after that production, the Government filed this motion seeking a pretrial ruling on the admissibility of the birth certificate.  [*Id.*]  The Government notes that Vasquez knew about the birth certificate about a month before trial but never challenged its authenticity.  [*Id.*]  In any event, the Government argues the birth certificate is admissible as an adoptive admission under Rule 801(d)(2) because Vasquez produced it as part of his Stay Application.  [*Id.*]

The Court denies the Government's request to admit the birth certificate under Rule 902(3).  The Government has not produced a certificate of genuineness that accompanies the birth certificate.  *See Constr. Drilling, Inc. v. Chusid*, 63 F. Supp.2d 509, 515 (D.N.J. 1999) (finding alleged foreign license to conduct business not self-authenticating under Rule 902(3) because it did not contain the "required certification" of genuineness); *see also Leiva v. Sec'y of Dep't of Homeland Sec.*, 230 F. Supp. 3d 406, 416 n.6 (D.N.J. 2017) (finding "documents created in Guatemala . . .  relevant to [petitioner'] marriage status  . . . not self-authenticating under Fed. R. Evid. 902(3) because they are not certified by a diplomatic or consular official,

33

and [petitioner] did not authenticate the documents himself"). A foreign birth certificate without an accompanying certification of genuineness is not a self-authenticating foreign document under Rule 902(3). *Jasso*, 2023 WL 1879405, at *3 (finding Mexican birth certificate not self-authenticating where "the document was not accompanied by a certification from relevant officials that the document was genuine").

The Court does not find good cause exists to excuse the final certificate of genuineness. Fed. R. Evid. 902(3)(A). Courts that have found good cause and excused the final certificate requirement did so because the Government tried to obtain the certificate, but ultimately, could not. *See United States v. McGowan*, 552 F. App'x 950, 955 (11th Cir. 2011) (finding good cause existed to excuse Rule 902(3)'s final certificate requirement where prosecution diligently tried to obtain certificate for months and the "inadequate certification letter was due to the Jamaican government's delayed cooperation"). The Government here has confirmed that it did not try to obtain a final certificate. *See United States v. Yousef*, 175 F.R.D. 192, 193-94 (S.D.N.Y. 1997) (refusing to excuse lack of final certificate under Rule 902(3)'s good cause provision even though defendant had a chance to investigate the documents because government "advanced [no] facts explaining its inability to obtain certification from one of the officials"). Also, while Rule 902(3)(A) is silent on notice, the Government never explicitly notified Vasquez that it intended to invoke the Rule's good cause provision.

The Government's adoptive admission argument is also unpersuasive. Based on the record, Vasquez submitted the Stay Application through an attorney. [Gov't Ex. B (Docket No. 65-1).] The record reveals that Vasquez retained an attorney to represent him to file an application to stay the removal in connection with his March 2018 Removal. [*Id.*] The attorney enclosed Vasquez' birth certificate in the Stay Application. [*Id.*]

34

The Court cannot accept the Government's adoptive admission argument for two reasons.  First, the Government has not proffered how it will lay the foundation to show that Vasquez adopted the contents of his attorney's letter submitting the Stay Application.  As noted, the *Gutierrez-Salinas* court faced a similar scenario above with an RSS and found the admission of the RSS without testimony laying the foundation for an adoptive admission improper.  640 F. App'x at 692.  Second, the Government wants to exclude the Stay Application at trial.  [Gov't Br. at 24-25.]  The Government cannot have it both ways.   So the Court denies the Government's motion to admit the birth certificate as an adoptive admission.

Turning to Rule 901, the Rule requires the proponent of the evidence to offer "evidence sufficient to support a finding that the item is what the proponent claims it is."  *United States v. Browne*, 834 F.3d 403, 408 (3d Cir. 2016) (quoting Fed. R. Evid. 901(a)).  This is a low bar. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 328 (3d Cir. 2005) ("The burden of proof for authentication is slight." (cleaned up, citation and internal quotation marks omitted)).  The Government here cannot authenticate the birth certificate by pointing to its presence in the A-file.  *Jasso*, 2023 WL 1879405, at *3.  In addition, that Vasquez' birth date on various documents in the A-file matches the date on the birth certificate is not enough to authenticate the certificate.  The Government may be able to authenticate the birth certificate at trial through a witness who can authenticate it.  *See Leiva*, 230 F. Supp. 3d at 416 n.6.

That said, the Court's ruling on the birth certificate should not be understood to mean the Court will not change course.  Vasquez may argue to the jury the Government did not introduce the certificate at trial.   It would be a fair argument given this Court's ruling.  But if Vasquez affirmatively argues or suggests to the jury in any way that the Government does not

have his birth certificate, the Court will revisit its ruling under Rule 902(3)(A)'s good cause provision.  It would be fundamentally unfair to allow Vasquez to argue to the jury the Government never procured his birth certificate when he, through his attorney, seemingly gave it to the Government.  Of course, if Vasquez elects to testify at trial, nothing prevents the Government from eliciting testimony about the birth certificate.

### G. The Parties' Other Requests are Denied

#### 1. Fingerprint Expert

The Court denies the Government's motion to admit expert testimony from the Government's Fingerprint Expert, Ruth Crowley, as moot.  Vasquez does not oppose having Crowley testify at trial. [Def. Opp'n Br. at 13.]

#### 2. Fingerprint Exemplars

The Court already denied the Government's motion to compel Vasquez to provide fingerprint exemplars on the record.  [Docket No. 71.]

#### 3. Collateral Attack on Prior Immigration Proceedings

The Court denies the Government's motion to preclude Vasquez from collaterally attacking his prior removals as moot because Vasquez "does intend to attack the procedures employed in any prior removal proceedings."  [Def. Opp'n Br. at 19.]

#### 4. Derivative Citizenship Defense

The Court also denies the Government's motion to preclude Vasquez from asserting a derivative citizenship defense as moot because Vasquez "does not plan to raise such a defense." [Def. Opp'n Br. at 19.]

## III.  CONCLUSION

For the above reasons, the Court **GRANTS, in part, DENIES, in part**, **and RESERVES, in part,** the parties' motions in *limine*.

An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: June 23, 2024

37