[Docket No. 92.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DOUGLAS VASQUEZ REYES,<br><br>Defendant. | Crim. No. 21-401 (RMB)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

After a jury convicted him of illegal reentry, 8 U.S.C. § 1326(a), Defendant Douglas Vasquez Reyes asked this Court to either throw out the jury's verdict and acquit him, or give him a new trial. [Docket No. 92.] Vasquez' main challenge to his conviction is that the Government not only offered no evidence that he did not seek permission from the Attorney General before reentering the United States after being removed, but told the jury that it didn't need to. The Court denied Vasquez' motion. [Docket No. 103.] The Court now explains why.

## I. BACKGROUND

The parties are familiar with the facts and evidence, and the Court writes primarily for them. The Government charged Vasquez with illegal reentry, in violation of 8 U.S.C. § 1326(a). [Docket No. 13.] To convict Vasquez of illegal reentry, the Government needed to prove, beyond a reasonable doubt, that Vasquez: "(1) is an alien, (2) 'was denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding,' (3) entered, tried to enter, or was 'found in[ ] the United States,' and (4) did not receive permission from the Attorney General to apply for

readmission." *United States v. Vasquez*, 2024 WL 3102248, at *4 (D.N.J. June 23, 2024) (alteration in original) (quoting 8 U.S.C. § 1326(a)).

At trial, the Government presented a handful of witnesses and introduced many documents into evidence. Because Vasquez only challenges the Government's proof on the last element of illegal reentry—that is, he did not receive the Attorney General's express consent to apply for readmission—the Court focuses its attention there. [Def.'s Mem. of Law in Supp. of Motion for J. of Acquittal or New Trial 6-10 (Def. Br.) (Docket No. 92).] The Government sought to prove that last element based largely on United States Citizenship and Immigration Services (USCIS) Officer Mary Senft's testimony.

Senft explained to the jury that she reviewed Vasquez' alien file, which was received into evidence. [Trial Tr. Vol. II 112:17 to 113:1; 115:18 to 23; Gov't Ex. 3 (Docket No. 121).] Senft also told the jurors about the I-212 form which is "permission to reenter the United States after removal or deportation." [*Id.* at 121:2 to 4.] She explained that she searched Vasquez' alien file and did not locate an I-212 or "any type of authorization to remain" in the United States for Vasquez. [*Id.* at 121:5 to 126:23; 179:9 to 16; Gov't Ex. 33.] As part of her search, Senft searched several databases looking for an I-212. [Gov't Ex. 33.] After an exhaustive search, Senft prepared a Certificate of Non-Existence of Record (CNR) that her supervisor signed-off on certifying that USCIS could not discover an I-212 for Vasquez. [*Id.* at 121:5 to 126:23; Gov't Ex. 33.]

On cross-examination, defense counsel questioned Senft about "that permission that [she] stated Mr. Vasquez didn't receive[,] [t]hat is permission from two individuals[.]" [*Id.* at 184:2 to 4.] Counsel clarified the question, asking Senft if the permission comes from "the Attorney General or the Secretary of the Department of Homeland Security[?]" [*Id.* at 184:9

to 10.] Senft testified "correct[,]" but explained that the permission comes from a "very specific form." [*Id.* at 184:11 to 14.] When asked if she "verif[ed] with those offices that they did, in fact, give Mr. Vasquez permission[,]" Senft explained she didn't "understand what offices[,]" explaining the "authority . . . to approve or handle those forms . . . [is] delegated." [*Id.* at 184:15 to 24.] On redirect, Senft clarified that only the Department of Homeland Security "has the authority to grant permission to reenter" the United States such as granting the I-212 "or the permissions that are at issue in this case[.]" [*Id.* at 188:1 to 17.]

On top of Senft, the jurors heard from Border Patrol Agent Jose Zuniga who apprehended Vasquez in May 2018, a few months after Immigration and Customs Enforcement removed Vasquez from the country. [*Id.* at 259:14 to 263:17; Gov't Ex. 25.] In a sworn statement, Vasquez told Zuniga that he entered the United States in May 2018 by wading across a river, that he had been previously removed from the United States, and that he did not obtain permission to reenter from the Secretary of the Department of Homeland Security before he reentered the country. [*Id.* at 271:1 to 273:11; Gov't Ex. 25.] Zuniga also told the jury about the "Warning to Alien Ordered Removed or Deported" that he gave to Vasquez (the Warning). [*Id.* at 274:7 to 276:8; 278:17 to 22; Gov't Ex. 26.] The Warning told Vasquez that he could not enter, attempt to enter, or be in the United States for a twenty-year period because he had reentered the country illegally. [Gov't Ex. 26.]

After the parties rested, the Court instructed the jury on the law and each element of illegal reentry. For the last element of illegal reentry, the Court explained, "[a]nd fourth, the defendant had not received the express consent of the Attorney General or the Secretary of the Department of Homeland Security to apply for readmission to the United States." [*Id.* at 342:10 to 13.] The Court then drilled down on this element, explaining:

> The fourth element that the government must prove beyond a reasonable doubt is that the defendant had not received the express permission of the Secretary of Homeland Security to apply for readmission. To satisfy this element, the government must prove that before leaving from a place outside the United States to enter the United States, the defendant did not obtain the express permission of the Secretary of Homeland Security to reapply for admission to the United States.

[*Id.* at 346:2 to 10.]  The jury ultimately convicted Vasquez of illegal reentry.  [*Id.* at 394:7 to 395:11.]

## II. DISCUSSION

### A. Vasquez' Motion for a Judgment of Acquittal

After a jury renders a guilty verdict, Federal Rule of Criminal Procedure 29(c) allows courts to set aside that verdict and acquit the defendant based on the sufficiency of evidence. A defendant moving to invalidate a conviction based on the sufficiency of evidence shoulders a challenging burden. *See, e.g.*, *United States v. Serafini*, 233 F.3d 758, 770 (3d Cir. 2000) (observing the burden on the defendant challenging the sufficiency of evidence is "extremely high"). When reviewing a verdict for sufficiency of evidence, courts view the evidence "in the light most favorable to the government" and will uphold the jury's verdict "if there is substantial evidence from which any rational trier of fact could find guilty beyond a reasonable doubt." *United States v. John-Baptiste*, 747 F.3d 186, 201 (3d Cir. 2014) (citation and internal quotation marks omitted). In making this inquiry, courts cannot "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006).

Vasquez' sufficiency of evidence challenge focuses on the last element of illegal reentry—that he did not receive the Attorney General's consent to reenter the country before he did.  [Def. Br. at 6-10.]  He contends the Government offered no evidence "as to possible

4

consent from the Attorney General" and then wrongfully instructed the jury that it needed only to present evidence that the Secretary of the Department of Homeland Security (Homeland Secretary) did not give consent. [*Id.* at 8.] Vasquez explains that some courts in illegal reentry prosecutions instruct juries that the government needs to show the lack of consent from both the Attorney General and Homeland Secretary. [*Id.* at 7.] And pointing to the Eighth Circuit's decision in *United States v. Fajardo-Fajardo*, 594 F.3d 1005 (8th Cir. 2010), he asserts that some courts have clarified who must consent, explaining that before "March 2023," the Attorney General must give consent and the Homeland Secretary "afterwards." [*Id.* at 8 (citing *Fajardo-Fajardo*, 594 F.3d at 1008).]

Vasquez is wrong on the law. Congress enacted the Immigration and Nationality Act (INA) in 1952, charging the United States Attorney General "with the administration and enforcement" of the law "and all other laws relating to the immigration and naturalization of aliens" except for certain powers, duties, and functions "conferred upon the President, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers[.]" INA, Pub. L. No. 82-414, § 103(a), 66 Stat. 163, 173-74 (1952). By the INA, Congress made illegal reentry a felony. *Id.* § 276, 66 Stat. at 229. In its original form (that largely mirrors its current form), Section 1326 made it illegal for an alien to reenter the United States if the alien:

> (1) has been arrested and deported or excluded and deported, and *thereafter* (2) enters, attempts to enter, or is at any time found in, the United States, *unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying*; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act.

*Id.* (emphasis added); *see also* 8 U.S.C. § 1326(a).

About a half-a-century after the INA, Congress enacted the Homeland Security Act of 2002, creating the Department of Homeland Security "as an executive department of the United States[.]" Pub. L. No. 107-296, § 101(a), 116 Stat. 2135, 2142 (2002) (codified at 6 U.S.C. § 111(a)). In doing so, Congress transferred many immigration enforcement powers to the newly created Homeland Secretary. *Id.* § 402, 116 Stat. at 2177-78 (codified at 6 U.S.C. § 202). One power Congress transferred from the Attorney General to the Homeland Secretary is the authority to grant consent for applications for readmission to the United States. *See, e.g.*, *United States v. Hernandez-Quintania*, 874 F.3d 1123, 1126 n.1 (9th Cir. 2017) (explaining Congress transferred the authority to consent to apply for readmission from Attorney General to Homeland Secretary); *see also United States v. Vara-Davila*, 410 F. App'x 395, 396-97 (2d Cir. 2011) (same).

Through the Homeland Security Act, Congress enacted a "reference" statute on the powers and functions being transferred to the Homeland Secretary that are mentioned in other laws. § 1517, 116 Stat. at 2311 (codified at 6 U.S.C. § 557). That statute says:

> With respect to any function transferred by or under this chapter (including under a reorganization plan that becomes effective under section 542 of this title) and exercised on or after the effective date of this chapter, *reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary*, other official, or component of the Department to which such function is so transferred.

6 U.S.C. § 557 (emphasis added). Given that reference statute, courts must read Section 1362(a) to require the government to prove, in illegal reentry prosecutions, that the removed alien reentered the United States without the Homeland Secretary's consent to apply for readmission. *United States v. Rios-Zamora*, 153 F. App'x 517, 502-21 (10th Cir. 2005) (noting

6

in illegal reentry prosecution that "[w]ith the transfer of authority under § 557, as of March 1, 2003, the title 'Attorney General' is synonymous with the Secretary of Homeland Security"). And despite Vasquez' characterization, the Eighth Circuit has explained that in illegal reentry prosecutions, the government must prove that "the defendant did not receive the consent of the Attorney General of the United States *before* March 1, 2003 or the Secretary of Homeland Security *after* February 28, 2003, to apply for readmission to the United States *since the time of the defendant's deportation.*" *Fajardo-Fajardo*, 594 F.3d at 1008 (emphases added).

Against that legal landscape, Vasquez' challenge to his illegal reentry conviction fails. By the Homeland Security Act, Section 1326(a) only requires the "advance consent" from the Homeland Secretary. *Rios-Zamora*, 153 F. App'x at 521. Senft, a twenty-two-year veteran of USCIS, explained that only the Department of Homeland Security has the authority to grant permission to reenter after an alien has been removed. [Trial Tr. Vol. II 188:1 to 17.] Given the Homeland Security Act, Senft's testimony is correct. 6 U.S.C. §§ 202, 557. In the final jury instructions, this Court explained to the jury that the Government must prove the last element of illegal entry by showing that Vasquez, "before leaving from a place outside the United States to enter the United States," "did not obtain the express permission of the Secretary of Homeland Security to reapply for admission to the United States." [*Id.* at 346:2 to 10.] So Vasquez' argument that the Government needed to prove that the Attorney General did not consent to reentry is legally meritless.[1]

---

[1] In fact, given the Homeland Security Act, the Tenth Circuit has explained that an indictment charging an illegal reentry violation that includes an allegation requiring "the advance consent from both the Attorney General and the Secretary of Homeland Security," might be subject to a motion to strike since the language requiring the Attorney General's consent "might be mere surplusage that need not be proven." *See Rios-Zamora*, 153 F. App'x at 520-21.

7

Turning to the evidence, Vasquez is not entitled to a judgment of acquittal. Viewing the evidence in the light most favorable to the Government, *see John-Baptiste*, 747 F.3d at 201, the jury had substantial evidence to find, beyond a reasonable doubt, that Vasquez did not receive the Homeland Secretary's express consent to apply for readmission. 8 U.S.C. § 1326(a). Senft explained that consent to reenter after removal or deportation comes from a specific form: the I-212. [Trial Tr. Vol. II 121:2 to 4; 184:11 to 14.] Senft searched Vasquez' alien file high-and-low and other databases and could not discover an I-212 or any other "type of authorization to remain" in the United States. [*Id.* at 121:5 to 126:23; 179:9 to 16; Gov't Ex. 33.] The Government also admitted into evidence the CNR. [Gov't Ex. 33.]

Courts have routinely upheld illegal reentry convictions based on this type of evidence. *See, e.g.*, *United States v. Ramirez-Gonzales*, 116 F. App'x 369, 372 (3d Cir. 2004) (affirming illegal reentry conviction, reasoning that the government presented sufficient evidence for the jury to find defendant did not receive consent to reenter the country where witnesses testified defendant's alien file would have shown an application for consent to reenter if defendant had made that application, and introducing CNR that certified no record of consent existed in defendant's alien file); *see also Fajardo-Fajardo*, 594 F.3d at 1009 (affirming defendant's illegal reentry conviction, reasoning jury could have reasonably concluded defendant did not receive permission to reenter the United States based on witnesses' testimony that they searched defendant's alien file and the "CIS database and did not find a record indicating [defendant] applied for [reentry] into the United States"); *United States v. Luna-Bolanos*, 369 F. App'x 947, 948-49 (10th Cir. 2010) (affirming defendant's illegal reentry conviction, finding government presented sufficient evidence for the jury to find that "defendant had not obtained express consent to reapply for admission to the United States after his deportation" where witnesses

searched multiple government databases and could not locate a record of consent, and one witness prepared a CNR).

That said, even if the Attorney General still had the authority to consent to readmission as Vasquez claims, *see* Def. Br. at 7-10, the jury could have reasonably concluded that Vasquez did not obtain consent from the Attorney General or Homeland Secretary. Indeed, after Vasquez' May 2018 illegal reentry, Zuniga gave the Vasquez the Warning.[2] [Trial Tr. Vol. II 274:7 to 276:8; 278:17 to 22; Gov't Ex. 26.] That Warning told Vasquez that he could not enter, attempt to enter, or be found in the United States for a twenty-year period after his removal from the country. [Gov't Ex. 26.] So based on the Warning, the jury could have found Vasquez was within the United States without either the Attorney General's or the Homeland Secretary's consent. *See Hernandez-Quintania*, 874 F.3d at 1126-27 (affirming illegal reentry conviction, finding jury could have concluded that defendant entered the United States without the Attorney General's or Homeland Secretary's consent where defendant's alien file custodian could not find an application for consent to reenter after searching two immigration databases, and the warning given to defendant after his removal instructed defendant that he needed permission from the Homeland Secretary to reenter the

---

[2] The Government's argument that Vasquez could not seek readmission for a twenty-year period following his August 2018 removal is not entirely correct. [Gov't Mem. of Law in Opp'n to Def.'s Motion for J. of Acquittal or New Trial 12 (Docket No. 101).] Under 8 U.S.C. § 1182(a)(9)(A), an alien who has been ordered removed is generally inadmissible for certain periods of time depending on the removal proceeding, either five-, ten-, or twenty-years. *Id.* But a removed alien can still apply for readmission during the period of inadmissibility. *Id.* § 1182(a)(9)(A)(iii) ("Clauses (i) and (ii) shall not apply to an alien seeking admission within a period if, prior to the date of the alien's reembarkation at a place outside the United States or attempt to be admitted from foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission."). Again, given the Homeland Security Act, only the Homeland Secretary can consent to a removed alien's readmission.  6 U.S.C. § 557.  Indeed, the Warning given to Vasquez explains that, "After your removal has been effected you must request and obtain permission from the Secretary of Homeland Security to reapply for admission *during the period indicated*." [Gov't Ex. 26 (emphasis added).] That said, the Government's evidence showed that Vasquez never obtained the Homeland Secretary's consent after his August 2018 removal.

country). The Court therefore refuses to set aside the jury's verdict and denies Vasquez' motion for a judgment of acquittal.

### B. Vasquez' Motion for a New Trial

Federal Rule of Criminal Procedure 33(a) allows a court, on a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." A court can order a new trial if it "believes that the jury verdict is contrary to the weight of the evidence," but only if "there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). Courts "sparingly" grant these motions and do so "only in exceptional cases." *Id.* at 1005 (quoting *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *Id.* at 1004 (quoting *Johnson*, 302 F.3d at 150).

A court can also grant a Rule 33 motion for a new trial based on trial errors. *United States v. Brown*, 2022 WL 16855129, at *2 (D.N.J. Nov. 10, 2022). Before granting a new trial based on this ground, a court must find that "the errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (cleaned up) (quoting *United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992)). Thus, a defendant must show "(1) that error occurred at trial, and (2) that error had a substantial influence on the verdict." *United States v. Amirnazmi*, 648 F. Supp. 2d 718, 720 (E.D. Pa. 2009), *aff'd*, 645 F.3d 564 (3d Cir. 2011). Courts evaluate any "alleged errors in the context of the strength of the evidence of guilt, the scope of the

objectionable conduct in relation to the entire proceeding, and the ameliorative effect of any curative instruction." *Brown*, 2022 WL 16855129, at *2.

Vasquez says the Court should order a new trial for three reasons. First, he claims the Government mischaracterized the law to the jury on the consent element of illegal reentry several times. [Def. Br. at 12.] He also contends the Government asked several witnesses to read the definition of illegal reentry to the jury. [*Id.*] According to Vasquez, that testimony contradicted this Court's instructions on the law. [*Id.*] Second, Vasquez argues the guilty verdict is against the weight of the evidence because the Government offered no evidence that the Attorney General did not consent to his reentry. [*Id.*] Lastly, Vasquez rehashes all his evidentiary objections he made before and at trial. [*Id.*]

Vasquez' arguments are meritless. Starting with the Government's conduct, the Court finds it did not misstate the law to the jury. Up top, this Court explained that through the Homeland Security Act, Congress amended Section 1326(a) to only require the "advance consent" from the Homeland Secretary. *Rios-Zamora*, 153 F. App'x at 521; *see also* 6 U.S.C. §§ 202, 557. So the Government did not misstate the law during its arguments to the jury. The Government's arguments aligned with this Court's final instructions to the jury on the consent element for illegal reentry. [*Compare* Trial Tr. Vol. II 346:2 to 10 (Court's Final Jury Instructions), *with id.* at 362:17 to 363:5 (Government's Summation), *and id.* at 377:8 to 378:13 (Government's Rebuttal Summation).]

In fact, the Government had to restate the law to correct Vasquez' characterization of it. Indeed, in closing, Vasquez argued to the jury:

> There are two ways, two ways that you can apply, ask for permission to reapply to the United States after previously being deported, two ways. And you'll see it in the indictment when it's read, and the Judge read it to you in the jury charge.

11

> You can receive express consent of the Attorney General or the Secretary of the Department of Homeland Security. And Mary Senft said, no, that law changed. The Attorney General has nothing to do with it anymore.
>
> Okay. All right. Anymore. But when was he ordered removed. When did he first come to this country? September 2001. September 2001. She told you she did not even look for any paperwork related to any application to the Attorney General because the law changed. Is there any evidence it changed before 2001?
>
> She didn't check the file. When I say there's not proof beyond a reasonable doubt in this case, that's what I'm talking about.

[*Id.* at 370:17 to 371:9.] This argument is misleading since it suggested that Vasquez could have obtained the Attorney General's consent to apply for readmission in 2001 even though he had not been removed from the country then.

Section 1326(a) requires consent from the Attorney General to apply for readmission only *after* the alien's removal. *Hernandez-Quintania*, 874 F.3d at 1126-27 ("[Section 1326(a)]'s plain language requires a deported alien to receive the Attorney General's consent to reapply for admission *after* his or her previous deportation, regardless of whether he or she had prior permission to reapply." (emphasis added)). The jury learned that Vasquez had been ordered removed in 2002, and then removed twice: first in March 2018 and then again in August 2018. [Gov't Exs. 13, 23, 29.] Earlier, this Court explained that after March 2003, a removed alien must obtain the Homeland Secretary's consent to apply for readmission. *Fajardo-Fajardo*, 594 F.3d at 1008. So Vasquez needed the Homeland Secretary's consent to reenter after his 2018 removals, which the evidence showed he did not have. Vasquez' argument to the jury to find reasonable doubt since Senft never looked for a consent to reapply in the Attorney General's files was thus misleading. And the Government did not overstep

12

by telling the jury, consistent with this Court's final jury instructions, that Vasquez needed the Homeland Secretary's consent to apply for readmission.

Turning to the alleged improper testimony, the Court notes that the Government elicited testimony from Senft and Zuniga who testified on the contents of separate "Warning to Alien Ordered Removed or Deported" forms, that specifically notified aliens that illegal reentry is a crime and providing penalties. [Trial Tr. Vol. II 137:12 to 20; 275:16 to 276:2; Gov't Exs. 22, 26.] Vasquez didn't object to Senft's testimony but did for Zuniga's testimony and asked for a curative instruction. [Trial Tr. Vol. II 276:10-11.] Vasquez complained that the Government had two witnesses "read the definition" of illegal reentry to the jury, and that the witnesses' definitions were "not in the same form that the [Court] is going to give[.]"[3] [*Id.* at 276:13 to 18.] On Vasquez' request, this Court gave the jury a curative instruction, telling the jurors the "Court will be instructing you as what the law is for the crime alleged here" and that the jurors are "bound to follow [the Court's] instructions." [*Id.* at 278:8 to 13.]

Vasquez complains that the witnesses' testimony on the definitions of the consent element of illegal entry conflicts with the Court's instructions. [Def. Br. at 12.] Not so. Those warnings notified aliens that it is a federal crime for "any alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent." [Gov't Exs. 22, 26.] The warnings' notification on the need for the Homeland Secretary's consent aligns with this Court's final instructions on the consent element for illegal entry. [Trial Tr. Vol. II 346:2 to 10.] The Court sees no error. In any event, the Court gave a curative instruction.

---

[3] Vasquez stated had no concern about the penalties listed in the forms that the witnesses read into the record. [Trial Tr. Vol. II 277:13 to 14.]

13

Vasquez' remaining arguments fail. Having conducted an independent assessment of the Government's evidence, *see Silveus*, 542 F.3d at 1004, the Court finds the jury's guilty verdict is not against the weight of the evidence. As already discussed, the Government offered ample evidence for the jury to find Vasquez did not have the Homeland Secretary's consent to reenter the country. Onto his evidence objections, Vasquez has not explained how any of the challenged evidence "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *Thornton*, 1 F.3d at 156 (cleaned up) (quoting *Hill*, 976 F.2d at 145). Indeed, Vasquez just rehashes his evidentiary objections he made before and at trial without any explanation on how the Court's rulings are incorrect. So his request for a new trial on this ground is denied. *See United States v. Noble*, 2022 WL 131135, at *2 (D.N.J. Jan. 14, 2022) (denying defendant's motion for a new trial based on the denial of his pretrial motions and the grant of the Government's pretrial motions because defendant offered no explanations on how the court's rulings "run afoul of applicable law").

### III. CONCLUSION

For the above reasons, the Court **DENIES** Defendant Douglas Vasquez Reyes' Motion for a Judgment of Acquittal, or in the alternative, for a New Trial (Docket No. 92).

                                        **s/Renée Marie Bumb**
                                        RENÉE MARIE BUMB
                                        Chief United States District Judge

Dated: October 4, 2024